UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MUHAMMAD AMIN, f/k/a, James Edwards**

                    Plaintiff,

          v.                                        5:02-CV-320 (HGM/GHL)

**COUNTY OF ONONDAGA NEW YORK,**

                    Defendants.
_____

**APPEARANCES:**                          **OF COUNSEL:**

JOHN A. LOFARO, ESQ.
Attorney for Plaintiff
307 South Clinton Street
Suite 200
Syracuse, New York 13202

COUNTY OF ONONDAGA DEPARTMENT OF LAW      CAROL L. RHINEHART, ESQ.
Attorneys for Defendant
James H. Mulroy Civic Center
421 Montgomery Street, 10th Floor
Syracuse, New York 13202

**HOWARD G. MUNSON**
**Senior United States District Judge**

### MEMORANDUM - DECISION AND ORDER

Currently before the Court is Defendant's motion for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure dismissing Plaintiff's action on the merits.  Dkt. No. 16,

Def.'s Notice of Mot. for Summ. J.  Plaintiff opposes Defendant's motion.  Dkt. No. 21, Pl.'s Resp.

For the reasons that follow below, the Court GRANTS Defendant's motion for summary judgment.

### BACKGROUND

**I.      Plaintiff's *Pro Se* Status and Local Rule 7.1**

Although Plaintiff has now retained counsel, when Defendant filed its motion for summary

judgment, Plaintiff was *pro se* and the Court must hold his submissions to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) *accord* Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [the *pro se* party's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); Graham v. Lewinski; 848 F.2d 342, 344 (2d Cir. 1988) (noting the "special solitude" afforded *pro se* litigants when confronted with motions for summary judgment). In this regard, the issue of whether a *pro se* litigant has received adequate notice of the nature and consequences of a motion for summary judgment is particularly acute. Absent a clear indication of the *pro se* litigant's understanding of the nature and consequences of Rule 56 of the Federal Rules of Civil Procedure, the moving party must so inform the *pro se* litigant or, failing that, the District Court must so inform the *pro se* litigant. "That notice should include a short and plain statement that all assertions of material fact in the movant's affidavits will be taken as true by the district court unless the *pro se* litigant contradicts those factual assertions in one or more affidavits made on personal knowledge containing facts that would be admissible in evidence or by submitting other materials as provided in Rule 56." McPherson v. Coombe, 174 F.3d 276, 282 (2d Cir. 1999). In this regard, "[w]here the proper notice has not been given, the mere fact that the *pro se* litigant has made some response to the motion for summary judgment is not dispositive where neither his response nor other parts of the record reveal that he understood the nature of the summary judgment process."[1] Vital v. Interfaith Med. Ctr., 168 F.3d 615, 621 (2d Cir. 1999).

This liberal standard, however, does not excuse a *pro se* litigant from complying with relevant rules of procedural and substantive law, including the formalities of summary judgment. *See* Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). More specifically, as set forth by the Local

---

[1]Prior to oral argument on Defendant's motion, the Court notified Plaintiff of the nature of Defendant's motion for summary judgment and the consequences of failing to respond to the motion.

Rules of Practice for the United States District Court for the Northern District of New York, the non-moving party is required to submit a Memorandum of Law in opposition to all motions.  *See* L.R. 7.1(a).  In addition, L.R. 7.1(a)(3) requires the non-moving party to file a response to the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  The non-moving party's failure to file such a response constitutes an admission of the movant's asserted non-disputed facts.  *See* L.R. 7.1(a)(3).  Moreover, the Court shall deem the non-moving party's failure to file or serve any papers as required by the Local Rules as consent to granting the motion.  *See* L.R. 7.1(b)(3).

The Local Rules are not empty formalities.  *See* Monahan v. New York City Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000) ("A district court has the discretion to adopt local rules that are necessary to carry out the conduct of its business.").  The Northern District of New York has adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions.  *See* Bombard v. Gen. Motors Corp., 238 F.Supp.2d 464, 466-67 (N.D.N.Y. 2002); Thomas v. Wright, 2002 WL 31309190, at *4 (N.D.N.Y. October 11, 2002); Giguere v. Racicot, 2002 WL 368534, at *2 (N.D.N.Y. March 1, 2002); Allen v. Comprehensive Analytical Group, Inc., 140 F.Supp.2d 229, 232 (N.D.N.Y. 2001); Adams v. New York State Thruway Auth., 2001 WL 874785, at *1, n.1 (N.D.N.Y. March 22, 2001); Bundy Am. Corp. v. K-Z Rental Leasing, Inc., 2001 WL 237218, at *1 (N.D.N.Y. March 9, 2001); Elgamil v. Syracuse Univ., 2000 WL 1264122, at *1 (N.D.N.Y. August 22, 2000).  Local Rules, such as 7.1(a), 7.1(a)(3), and 7.1(b)(3), "serve to notify the parties of the factual support for their opponent's arguments, but more importantly inform the court of the evidence and arguments in an organized way–thus facilitating its judgment of the necessity for a trial."  Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995).  Each of these functions is

critical. A party's failure to comply with these rules is fundamentally unfair to the opposing party. The opposing party has a right to be informed of the factual bases of his adversary's case and the specific foundations for those contentions of fact. Non-compliant conduct is also adverse to the conservation of judicial resources which are most efficiently used when the parties meet their adversarial duties in a tightly orchestrated and lucid manner. *See* Meaney v. CHS Acquisition Corp., 103 F.Supp.2d 104, 107 (N.D.N.Y. 2000); Niles v. New York Office of Mental Retardation and Developmental Disability, 1996 WL 743839, at *6 (N.D.N.Y. December 20, 1996).

Plaintiff has filed opposition, *see* Dkt. No. 21, to Defendant's motion for summary judgment, but his opposition papers do not conform to the dictates of Local Rule 7.1(a)(3): Plaintiff submitted a Statement of Material Facts which neither admitted nor denied Defendant's assertions as contained in its Statement of Material Facts. Although Plaintiff's right to self-representation "should not be impaired by harsh application of technical rules," Zuck, 710 F.2d at 95, pursuant to Local Rule 7.1(a)(3), the Court accepts as true those properly supported uncontested facts contained in Defendant's Statement of Material Facts.

## II.     Plaintiff's Complaint

On March 5, 2002, Plaintiff, Muhammad Amin, f/k/a James Edwards, filed a *pro se* complaint pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against Defendant, the County of Onondaga, New York, alleging, *inter alia*, violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. *See* Dkt. No. 1, Compl. at ¶¶ 1-5. Plaintiff alleges that on December 1, 1999, while incarcerated at the Onondaga County Justice Center ("Justice Center"), Defendant failed to provide adequate footwear and as a result, Plaintiff, who is diabetic, developed blisters and infections on his feet. Plaintiff further alleges that Defendant refused to

provide proper medical care for these injuries.[2]   *See* Dkt. No. 1, Compl. at ¶¶ 8-15.   Although inartfully pleaded, Plaintiff also alleges that the injuries he sustained were the result of an official policy maintained by Defendant whereby its employees were permitted to mistreat and deny medical treatment to Justice Center inmates in contravention of their constitutional rights.   Moreover, Plaintiff alleges that Defendant failed to properly supervise and train its employees.   Plaintiff alleges that Defendant acted with deliberate indifference in enacting "policies and customs . . . detrimental to the health and welfare" of inmates housed at the Justice Center and at OCCF.   *See* id. at ¶¶ 20-22. Finally, somewhat hidden in Plaintiff's complaint and other documentation contained in the record are claims regarding alleged violations of Plaintiff's equal protection rights under the Fourteenth Amendment, Plaintiff's Fourth Amendment rights, and claims under 42 U.S.C. §§ 1985(3) and 1986 for conspiracy to deprive him of his civil rights and neglect in preventing such a conspiracy.   *See* id. at ¶¶ 3-5, 23; *see generally* Dkt. No. 19, Def.'s Ex. D, Amin Dep.   Plaintiff asserts that Defendant caused him to have suffered: permanent physical injuries, pain, emotional distress, medical expenses resulting from surgery necessitated by his injuries and lost wages.   Plaintiff seeks $750,000 in compensatory damages and $1,000,000 in punitive damages.   *See* Dkt. No. 1, Compl. at ¶¶ 24–"Wherefore" clause.

## III.   Plaintiff's Term of Incarceration

From December 1, 1999 until December 17, 1999, Plaintiff was held at the Justice Center as a pre-trial detainee.   *See* Dkt. No. 18, Def.'s Statement of Material Facts at ¶ 1.   Upon his arrival at the Justice Center, a nurse examined Plaintiff and obtained his medical history.   At this time,

---

[2] Although Plaintiff specifies December 1, 1999, as the only operative period of time in question, under the forgiving standard afforded *pro se* litigants, the Court can infer that Defendant's alleged denial of adequate footwear and medical treatment occurred over the course of Plaintiff's period of incarceration–December 1, 1999 through February 11, 200–both at the Justice Center as well as the Onondaga County Correctional Facility ("OCCF").   *See* Dkt. No. 18, Def.'s Statement of Material Facts at ¶¶ 1-23.

Plaintiff informed Justice Center employees that he was diabetic, had a heart condition and a history of seizures. *See* Dkt. No 19, Def.'s Statement of Material Facts at ¶ 2. Defendant asserts that during Plaintiff's stay as a pre-trial detainee, staff attended to Plaintiff at least twice a day for care related to his diabetes. In addition to this daily medical attention, a nurse attended to Plaintiff on at least seven separate occasions, and a physician attended to Plaintiff on three separate occasions. *See* id. at ¶ 3. On December 2, 1999, Plaintiff asked to see a physician because he believed his feet were infected. In response, Dr. Burgess, a physician serving both the Justice Center and OCCF, examined Plaintiff on December 6, 1999, prescribed an antibiotic and Tylenol for Plaintiff's discomfort and ordered that a consultation with a podiatrist be scheduled. *See* id. at ¶ 4. On December 9, 1999, Plaintiff sought medical care for his feet and legs, and on December 10, 1999, Dr. Burgess again attended to him. *See* id. at ¶ 5. On December 13, 1999, Plaintiff again sought medical care for his feet and on December 16, 1999, Dr. Sherman examined Plaintiff's feet and prescribed Clotrimazole cream. *See* id. at ¶¶ 6, 8.

On December 15, 1999, Plaintiff filed a grievance in which he complained that the sores on his feet had not been treated and requested that he be taken to see a specialist at the SUNY Health and Science Center ("SHSC"). *See* Dkt. No. 19, Ex. C, Pl.'s Grievance Forms and Responses thereto. On December 17, 1999, Plaintiff was transferred to OCCF to serve a nine-month local sentence. *See* Dkt. No. 18, Def.'s Statement of Material Facts at ¶ 10. The following day, an OCCF nurse attended to Plaintiff after he complained of pain in both of his heels, which prevented him from wearing socks or sneakers. *See* id. at 11. On December 25, 1999, an OCCF nurse again saw Plaintiff because he was observed wearing shower shoes. Plaintiff claimed that sneakers hurt his feet. The attending nurse noted swelling, discoloration and dry cracked skin on Plaintiff's feet. The Clotrimazole cream was prescribed to cure/prevent the dry, cracked skin, but Plaintiff protested that

he had nothing to put on his feet and asserted that the cream did not work.  Plaintiff was scheduled

to see a doctor on December 28, 1999, but Plaintiff filed another grievance on December 26, 1999,

in which he complained that he had been denied medical treatment and that his feet were

deteriorating.  *See* Dkt. No. 18, Def.'s Statement of Material Facts at ¶ 13-14.  In response to

Plaintiff's grievance, OCCF personnel countered that Plaintiff had been seen numerous times by

medical staff, that he was scheduled to see a podiatrist and that he should follow the medical regimen

outlined for him by the medical professionals.  *See* id.  Dr. Smith examined Plaintiff's feet on

December 28, 1999, and found that Plaintiff's feet were infected and might require antibiotics.  Dr.

Smith sent Plaintiff to the Emergency Room at SHSC.  *See* id. at ¶ 15.  Upon Plaintiff's return to

OCCF, Dr. Smith scheduled close follow-up care with Plaintiff and also ordered special boots for

Plaintiff from a medical supply company.  *See* Dkt. No. 19, Def.'s Ex. B, OCCF Med. R; Dkt. No.

18, Def.'s Statement of Material Facts at ¶ 15; Dkt. No. 16, Johnston Aff. at ¶ 14.  On December 31,

1999, Plaintiff was sent back to the ER with infections in his feet.  *See* Dkt. No. 18, Def.'s Statement

of Material Facts at ¶ 16.  Upon this release from the ER, Plaintiff was sent to the Justice Center

infirmary where he could be closely observed by the medical staff.  *See* id. at ¶ 17.  Medical

recommendations from physicians at SHSC suggested proper foot care, including bed rest and

elevation of both feet.  *See* id.  The medical records indicate that Plaintiff was generally non-

compliant with all medical recommendations.  *See* Dkt. No. 16, Johnston Aff. at ¶ 29; Dkt. No. 19,

Def.'s Ex. B, OCCF Med. R.

On January 3, 2000, Plaintiff returned to OCCF, and on January 7 and 10, he was seen by

medical personnel who noted marked improvement in both feet.  *See* Dkt. No. 18, Def.'s Statement

of Material Facts at ¶ 18.  As a precautionary measure taken so that Plaintiff's foot condition would

not deteriorate, Plaintiff was sent back to the Justice Center where he would not have to walk outside

in wintery conditions in order to receive his meals. *See* id.  In addition, Plaintiff was given stronger pain medications, but he refused to take them. *See* id.; Dkt. No. 16, Johnston Aff. at ¶¶ 19 and 21. On January 13, 2000, Plaintiff was seen by the Podiatry Clinic at SHSC, where medications were prescribed for his feet. *See* Dkt. No. 18, Def.'s Statement of Material Facts at ¶ 19.

Between January 14th and 20th, Plaintiff refused to see a nurse and filed another grievance complaining that he had to walk to sick call every morning, which was painful.  In response to this grievance, prison medical personnel ordered a wheelchair for Plaintiff and also instructed the nurses to examine Plaintiff's feet whenever possible. *See* id. at 21.  From January 24 through February 10, 2000, Plaintiff was seen by a nurse for foot care at least six times, by a physician twice, and by the podiatry clinic once. *See* Dkt. No. 19, Def.'s Ex. B, OCCF Med. R.; Dkt. No. 16, Johnston Aff. at ¶¶ 23-27.  Plaintiff's stay at the Justice Center and OCCF ended on February 11, 2000, when Plaintiff was transferred to the Elmira Correctional Facility to serve a one-and-a-half to three year state prison sentence. *See* Dkt. No. 18, Def.'s Statement of Material Facts at ¶ 23.

In his opposition papers, Plaintiff asserts that the injuries he allegedly sustained while incarcerated at the Justice Center and OCCF resulted in surgery and that Defendant ignored this fact. *See* Dkt. No. 21, Pl.'s Aff. at ¶ 2.  Defendant not only acknowledged this fact, but also supplied pertinent background information. *See* Dkt. No. 17, Def.'s Mem. of Law at 7.  In 1991, Plaintiff had surgery on his toes during which hardware was inserted. *See* Dkt. No. 19, Ex. D. at 8.  Plaintiff developed an infection in his feet while in Defendant's custody which was treated, *see supra*, and subsequently, six to eight months after his transfer from Defendant's custody to state prison, Plaintiff had surgery to remove the hardware in one of his toes. *See* Dkt. No. 19, Ex. E.

**DISCUSSION**

**I.     Summary Judgment Standard**

The standard for summary judgment is familiar and well-settled.  Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L. Ed. 2d 265 (1991) (quoting FED.R.CIV.P. 1).  A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist. See Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990).  In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party.  See id.; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L. Ed. 2d 176 (1962) (per curiam).  If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).  The role of the court on a motion for summary judgment is not to try issues of fact but only to determine whether there are issues of fact to be tried. See, e.g., Anderson, 477 U.S. at 255, 106 S.Ct. at 2513; Gallo v. Prudential Residential Services, Limited Partnership, 22 F.3d 1219, 1223-24 (2d Cir.1994); Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir.1987).  The drawing of inferences and the assessment of the credibility of the witnesses remain within the province of the finders of fact.  To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party."

Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.   When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper.  *See* Anderson, 477 U.S. at 250-251, 106 S.Ct. at 2511.

## II.   Eighth Amendment Standard–Inadequate Medical Care

Plaintiff alleges that while he was incarcerated, Defendant failed to provide him with proper medical care.  *See* Dkt. No. 1, Compl. at ¶¶ 8-15.  Under the relaxed pleading standards afforded *pro se* litigants, the Court infers that Plaintiff sets forth a cause of action based on "cruel and unusual punishment" during his confinement at OCCF and the Justice Center.  The Court draws its inference from Plaintiff's Complaint wherein he alleges that Defendant denied him proper medical care and he asserts claims arising under both the Eighth Amendment and 42 U.S.C. § 1983.  *See* Dkt. No. 1, Compl. at ¶¶ 3-5, 14-15, 18, 20, 23.

### A.   Standard for Pre-Trial Detainees

Plaintiff's allegations pertain to inadequate medical care, which allegedly began when he was held as a pre-trial detainee at the Justice Center.  *See generally* Dkt. No. 1, Compl.  This is noteworthy for the Eighth Amendment's prohibition against "cruel and unusual punishment" does not apply to pre-trial detainees because they are not being punished.  *See* Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) (citing City of Revere v. Massachusetts Gen. Hosp.,463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983)).  Although the cruel and unusual punishment provision does not apply to pre-trial detainees, their rights are protected by the Due Process Clause of the Fourteenth Amendment.  *See* id.  While the Supreme Court has not yet addressed the scope of pre-trial detainees' rights under the Due Process Clause of the Fourteenth Amendment, the Second Circuit has recognized that the rights of pre-trial detainees are at least as great as those of convicted prisoners under the Eighth Amendment's cruel and unusual provision.  *See* id. (citing City of Revere,

463 U.S. at 244). Pre-trial detainees have also been afforded protection under the Fifth Amendment Due Process Clause. Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000). Here, Plaintiff set forth claims arising under both the Fifth and Eighth Amendments. Dkt. No. 1, Compl. at ¶¶ 1-5. Because the Second Circuit has applied the same test for both pre-trial detainees and convicted prisoners, the fact that Plaintiff was held as a pre-trial detainee for a portion of the time in which the alleged deficient medical care occurred is of no moment. *See* Weyant, 101 F.3d at 856.

      *B.     Standard for Convicted Prisoners*

      The Eighth Amendment prohibits cruel and unusual punishment, which involves the "unnecessary and wanton infliction of pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citing Gregg v. Georgia, 428 U.S. 153, 176, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Id. (citing Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 291, 50 L.Ed.2d 251 (1976)). The deliberate indifference standard contains two tests, one requiring an objective analysis which measures the severity of the alleged deprivation, *see* Chance, 143 F.3d at 702, and the other requiring a subjective analysis to determine whether the prison official acted with a sufficiently culpable state of mind. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

      1.     Objective Test

      Plaintiff must first show that the alleged deprivation of serious medical needs is "sufficiently serious." Id. (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)); Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (citing Estelle, 429 U.S. at 103-04, 97 S.Ct. 285) ("[S]ociety does not expect that prisoners will have unqualified access to health care, [so] deliberate indifference to medical needs amounts to an Eighth Amendment

violation only if those needs are 'serious.'").  While "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition," the Second Circuit has "set forth factors that should guide the analysis . . . including: (1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'"  Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (citation omitted); *see also* Hathway, 37 F.3d at 66 (holding that a prisoner's medical needs are "sufficiently serious" when a condition of urgency exists, that may produce death, degeneration, or extreme pain) (citing Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting)).

Here, Plaintiff's medical condition suggests that he has serious medical needs.  Without proper care, Plaintiff's diabetes, foot and heart conditions could produce extreme pain and perhaps result in Plaintiff's death.  Plaintiff has failed to show, however, that Defendant deprived him of proper medical care for his serious medical needs.  Plaintiff admittedly received medical treatment throughout his stay at OCCF and the Justice Center.  *See* Dkt. No. 19, Def.'s Ex. D, Amin Dep. at 27-28, 50-51.  The record reveals that prison physicians and nurses attended to Plaintiff on numerous occasions.  *See* Dkt. No. 19, Def.'s Ex. B, OCCF Med. R.  In addition, emergency room physicians from both SHSC and Crouse-Irving Memorial Hospital attended to Plaintiff while he was incarcerated.  *See* id.  A podiatry specialist at the SHSC Podiatry Clinic also attended to Plaintiff during his incarceration.  *See* Dkt. No. 16, Johnston Aff. at ¶¶ 8-10.  These various medical professionals prescribed, *inter alia*, intravenous, oral and topical antibiotics, cream for dry skin on Plaintiff's feet, and Tylenol for pain.  *See* Dkt. No. 16, Johnston Aff. at ¶¶ 8-10; Dkt. No. 19, Ex. B, OCCF Med. R.  In addition, Plaintiff was instructed to keep his feet elevated and to stay off his feet whenever possible.  To this end, prison staff moved Plaintiff to an area of the facility where he

would not have to walk outside during the winter to receive his meals.  *See* Dkt. No. 16, Johnston

Aff. at ¶¶ 8-10.  Furthermore, the physicians who attended to Plaintiff instructed him to wash his feet

daily.  Plaintiff was given extra pillows while at OCCF to elevate his feet.  *See* Dkt. No. 19, Def.'s

Ex. D, Amin Dep. at 25-26, 52.  Not only did Plaintiff receive medical care for his foot problems,

but he was also treated for his heart condition and diabetes.[3]  *See* id. at 46; Ex. B, OCCF Med. R.

###### 2.     Subjective Test

Even assuming *arguendo* that Plaintiff demonstrated Defendant's deprivation of a serious

medical need, his claim would still fail.  Under the subjective test, Plaintiff must show that the

accused prison officials knew of and disregarded an excessive risk to his health or safety.  *See*

Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  To establish this

subjective element, Plaintiff must show that  the prison officials acted with a "sufficiently culpable"

state of mind.  Hathway, 37 F.3d at 66 (citing Wilson, 501 U.S. at 298).  In other words, "the official

must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  "Deliberate

indifference requires more than negligence, but less than conduct undertaken for the very purpose

of causing harm."  Hathway, 37 F.3d at 66 (citing Farmer, 511 U.S. at 835).  The Second Circuit has

analogized this requisite state of mind to that of criminal recklessness.  Hathway v. Coughlin, 99

F.3d 550, 553 (2d Cir. 1996) ("Hathway II") (citing Farmer, 511 U.S. at 836-37).  Ordinarily, a

defendant's knowledge is a question of fact to be determined at trial.  Weyant, 101 F.3d at 856.  A

plaintiff-inmate's conclusory allegations, however, are insufficient "to defeat a well-supported

motion for summary judgment."  Francis v. Coughlin, 891 F.2d 43, 47 (2d Cir. 1989).

Here, it is clear that the medical personnel at OCCF knew of Plaintiff's foot condition.

---

[3]Plaintiff does not allege any denial of adequate medical treatment with respect to either his diabetes or heart condition and thus no further discussion is warranted.

Beyond mere conclusory allegations, however, Plaintiff fails to submit any evidence demonstrating Defendant's disregard for his severe medical condition.  To the contrary, the medical records reveal that Plaintiff was given substantial treatment for all of his medical conditions.  Plaintiff alleges that Defendant prematurely withdrew his antibiotics and that Defendant demanded that physicians at SHSC and Crouse-Irving release him prematurely from their respective facilities.  Plaintiff alleges that but for the prison officials' demands, physicians at SHSC and Crouse-Irving would have maintained him in their care.  Again, Plaintiff fails to submit any evidence in support of his allegation. The record before the Court contradicts Plaintiff's assertion that Defendant denied him antibiotics upon his return from the hospital.  *See* Dkt. No. 19, Def.'s Ex. D, Amin Dep. at 35, Ex. B, OCCF Med. R.  Even if Plaintiff supported his allegations, it is not clear that they would rise to the requisite level of egregiousness.  *Compare* Hernandez v. Keane, 341 F.3d 137, 146 (2d Cir. 2003) (finding no Eighth Amendment violation where inmate's treating physician failed to schedule an appointment regarding potential hand surgery; failed to place a medical hold to forestall transfer to another prison while surgery was being considered; failed to arrange to have the pins and wires removed from plaintiff's hand within ten weeks after surgery; and failed to ensure that plaintiff received prescribed physical therapy for his hand) *with* Hathaway II, 37, F.3d at 67 (holding that a prolonged delay–two years–in treatment for chronic hip pain could support an inference of deliberate indifference).

The Court also notes that Plaintiff was generally non-compliant with medical advice and treatment recommendations, *see* Dkt. No. 16, Johnston Aff. at ¶ 29, which constitutes an additional ground for dismissal.  *See* Jones v. Smith, 784 F.2d 149, 151-52 (2d Cir. 1986) (affirming district court's dismissal of inmate's Eighth Amendment claim "on the ground that, given his constant declinations to be treated by prison doctors, failure to treat his back was at best a question of

malpractice, which . . . did not rise to the 'deliberate indifference to serious medical needs' necessary to state an eighth amendment claim").

Plaintiff has failed to offer evidence sufficient to establish a claim of deliberate indifference to serious medical needs under the Eighth Amendment.

**III.   Unconstitutional Custom/Policy**

Plaintiff alleges that Defendant failed to adequately train and supervise employees and that Defendant maintained a constitutionally deficient policy to this effect. *See* Dkt. No. 1, Compl. at ¶¶ 20-22.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To establish liability under 42 U.S.C. § 1983 against a municipality for conduct by public employees, a plaintiff must show that the claimed constitutional violation resulted from a municipal custom or policy. *See* Monell v. New York City Dep't. of Social Services, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").  "Custom" denotes "persistent and widespread . . . practices," *see* Adickes v. S.H. Kress & Co., 398 U.S. 144, 167, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970), and thus "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-34, 105 S.Ct. 2427,

2436, 85 L.Ed.2d 79 (1985).   In addition, there is no respondeat superior liability against a municipality under 42 U.S.C. § 1983 for conduct by employees below the policymaking level. Monell, 436 U.S. at 691-95.  The offending custom or policy may be established by showing that the municipality "so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991).  Inadequate training will serve as basis for § 1983 liability where failure to train amounts to deliberate indifference to the rights of persons with whom the employee(s) come into contact.  City of Canton, Ohio v. Harris, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989).  A plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious, *see* Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing Harris, 489 U.S. at 390, 109 S.Ct. at 1205), as through evidence that a municipality had notice of misconduct, but repeatedly failed to make any meaningful investigation into charges of misconduct in violation of complainants' civil rights.  *See* Ricciuti, 941 F.2d at 123.  "The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993).

It is not clear to the Court that Plaintiff suffered an injury.  Plaintiff acknowledges that he has had various problems with his feet for years.  *See* Dkt. No. 19, Def.'s Ex. D, Amin Dep. at 5-10.  At his deposition, Plaintiff testified that he underwent foot surgery in 1991 in which a wire was inserted into his left big toe to keep it from turning inward after tendons were removed.  *See* id. at 8.  Plaintiff also developed bilateral bunyans prior to being held as a pre-trial detainee at the Justice Center.  *See* Dkt. No. 19, Ex. D. Amin, Dep. at 9-10.  Although Plaintiff was beset by serious medical needs, as noted above, his medical records indicate that he was attended to numerous times by medical

professionals and that they prescribed and administered a variety of treatments. Plaintiff filed several grievances during his stay at the Justice Center and OCCF, but the record reveals that personnel at the Justice Center and OCCF promptly addressed each grievance. *See* Dkt. No. 19, Ex. E. For example, on January 16, 2000, Plaintiff filed a grievance requesting a wheelchair to take him to sick call every morning for examination of his feet. On January 21, an order granted Plaintiff's request for a wheelchair, and Plaintiff signed the resolution portion of the grievance form acknowledging the action taken and his satisfaction with the result. *See* id. Defendant had a grievance procedure whereby it investigated inmates' complaints and attempted to resolve issues raised by such complaints. Plaintiff was familiar with the procedure and utilized it on numerous occasions. *See* id. at Ex C. Defendant's agents made meaningful attempts to address Plaintiff's complaints.

Assuming *arguendo* that a constitutional deprivation occurred, Plaintiff must further establish a causal link between the alleged constitutional deprivation and the municipal custom or policy. Harris, 489 U.S. at 385, 109 S.Ct. at 124. Plaintiff's unsupported assertion that he suffered permanent physical injury while in Defendant's custody and the speculative and tenuous connection Plaintiff attempts to draw between the surgery later required for a preexisting foot condition after his transfer to state prison do not suffice to state a cognizable claim under § 1983. Plaintiff offers no evidence in support of his contention that his alleged injuries resulted from a constitutionally infirm municipal custom or policy.

In his complaint, Plaintiff does not identify any of the officials who allegedly implemented the unconstitutional custom or policy. Plaintiff's deposition testimony does not clarify the matter. At one point, Plaintiff claims that either Dr. Johnston[4] or Dr. Smith denied him the use of a

---

[4]Dr. Johnston is the Medical Director for the Onondaga County Health Department and is responsible for the medical care of inmates at the Justice Center and OCCF. He was one of three prison physicians to examine Plaintiff during his period of incarceration at the Justice Center and OCCF.

wheelchair, which forced him to walk. *See* Dkt. No.19, Ex. D, Amin Dep. at 24. Later in his

deposition, however, Plaintiff claims that Dr. Smith and Dr. Burgess[5], or Dr. Smith would provide

him with a wheelchair but that "the jail would take the wheelchair back, so these doctors were trying

to look out for me and keep me from loosing [sic] my feet." Id. at 51. Plaintiff also claims, without

evidence, that because an officer determined that he did not ambulate at a sufficient pace, the officer

retaliated against him by providing shoes that were too small. *See* id. at 37-38. These allegations,

however, are insufficient to state a claim against Defendant under § 1983.

## IV.    Equal Protection Claim

Plaintiff alleges that Defendant violated his Fourteenth Amendment right to equal protection

of the law. The Fourteenth Amendment states that "[n]o State shall . . . deny to any person within

its jurisdiction the equal protection of the laws," U.S. CONST. amend. XIV, § 1, "which is essentially

a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v.

Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citation

omitted). An equal protection claim requires a showing that: (1) the person, compared with others

similarly situated, was selectively treated, and that (2) the selective treatment was motivated by an

intention to discriminate on the basis of impermissible considerations, such as race or religion, to

punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure

the person. Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). Thus, to establish an equal

protection claim, it is essential for a plaintiff to allege and show that other similarly situated

individuals were treated differently. *See* Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 61 (2d Cir.

1985).

Plaintiff has failed to show that he was treated differently than other similarly situated

---

[5]The Court infers that Plaintiff meant to say "Dr. Burgess" at his deposition where the transcript states "Dr. Bridges."

inmates.  Plaintiff merely offers the conclusory allegation that he was treated differently than other similarly situated inmates, but failed to produce any evidence supporting his assertion.  Even assuming *arguendo* that Plaintiff had made the required showing that he was treated differently than other similarly situated persons, his equal protection claim would still fail because he failed to offer any evidence establishing that the alleged selective treatment was motivated by an intent to discriminate on the basis of impermissible considerations to violate his constitutional rights or to injure him.

## V.      Fourth Amendment Claim

In his complaint, Plaintiff asserts that Defendant violated his Fourth Amendment rights.  S*ee* Dkt. No. 1, Compl. at ¶¶ 3, 23.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.  Aside from the complaint's reference to the Fourth Amendment, the record is bereft of any evidence suggesting a possible violation of Plaintiff's Fourth Amendment rights.  Even under the relaxed pleading standards afforded *pro se* litigants and construing the facts in the light most favorable to Plaintiff as the non-moving party, the Court finds no basis to support Plaintiff's claim that Defendant violated his Fourth Amendment rights.

## VI.     Conspiracy to Interfere with Civil Rights–42 U.S.C. §§ 1985, 1986

In his complaint, Plaintiff purportedly asserts jurisdiction for his claims pursuant to 42 U.S.C. §§ 1985 and 1986.  The Court infers from Plaintiff's complaint and his deposition testimony that Plaintiff seeks to establish claims under both 42 U.S.C. §§ 1985 and 1986.  *See generally* Dkt. No. 19, Ex. D, Amin Dep.

Section 1985(3) provides in part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages . . . .

42 U.S.C. § 1985(3).  The Court infers that Plaintiff alleges that a conspiracy to deprive him of his constitutional rights to equal protection existed between some employees of OCCF and/or the Justice Center.

Plaintiff also appears to attempt to assert a claim under § 1986.  Plaintiff alleges that individuals at OCCF and the Justice Center had knowledge of the alleged § 1985(3) conspiracy and failed to take action to prevent or report the conspiracy.  Section 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993).

To establish a claim under § 1985(3), Plaintiff must allege and prove the following four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class or persons of equal protection of the laws, or of equal privileges and immunities under the laws[6]; (3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.  Scott, 463 U.S. at 828-29, 103 S.Ct. at 3356 (citation omitted).

---

[6]The conspiracy must also be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  United Bhd. of Carpenters, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (citing Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

*Pro se* complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights are subject to dismissal.  Dwares, 985 F.2d at 100. Plaintiff has failed to establish a claim under § 1985(3).  Despite the Court's piecemeal efforts, Plaintiff has failed to provide the names or even descriptions of those persons alleged to have participated in the conspiracy, let alone produce any facts suggesting a "meeting of the minds," or any overt acts in furtherance of the alleged conspiracy.  *See* Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003).  Such deficiencies are fatal to Plaintiff's conspiracy claim.  Plaintiff's § 1986 claim also fails because § 1986 claims must be predicated upon a valid § 1985 claim.  Mian, 7 F.3d at 1088.

## VII.   Punitive Damages Not Available

In his prayer for relief, Plaintiff requests punitive damages against Defendant.  Punitive damages are unrecoverable under § 1983 from a municipality but are available in a suit against an official sued in his personal capacity.  Kentucky v. Graham, 473 U.S. 159, 166, n.13, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).  Inasmuch as Defendant Onondaga County is a municipality and because Plaintiff has failed to name a single individual agent of the County in his complaint, Plaintiff's claim for punitive damages fails.

## CONCLUSION

**WHEREFORE,** after careful consideration of the file in this matter including the parties'

submissions, oral argument, and the applicable law, the Court hereby **GRANTS** Defendant's motion

for summary judgment and **DISMISSES** Plaintiff's complaint in its entirety.

**IT IS SO ORDERED.**

Dated: June 13, 2006
Syracuse, New York

Howard G. Munson
Senior  U.S. District Judge